# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

Case No. 2:15-cv-00016-MKD

GERALD WILLIAM JORDAN, JR.,

                    Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross-motions for summary judgment.

ECF Nos. 14, 16.  The parties consented to proceed before a magistrate judge.  ECF

No. 7.  The Court, having reviewed the administrative record and the parties'

briefing, is fully informed.  For the reasons discussed below, the Court grants

Defendant's motion (ECF No. 16) and denies Plaintiff's motion (ECF No. 14).

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

ORDER  ~ 1

1

**STANDARD OF REVIEW**

2    A district court's review of a final decision of the Commissioner of Social

3 Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

4 limited; the Commissioner's decision will be disturbed "only if it is not supported by

5 substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158

6 (9th Cir. 2012).  "Substantial evidence" means relevant evidence that "a reasonable

7 mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and

8 citation omitted).  Stated differently, substantial evidence equates to "more than a

9 mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).

10 In determining whether the standard has been satisfied, a reviewing court must

11 consider the entire record as a whole rather than searching for supporting evidence in

12 isolation.  *Id.*

13    In reviewing a denial of benefits, a district court may not substitute its

14 judgment for that of the Commissioner.  If the evidence in the record "is susceptible

15 to more than one rational interpretation, [the court] must uphold the ALJ's findings

16 if they are supported by inferences reasonably drawn from the record." *Molina  v.*

17 *Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not

18 reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is

19 harmless "where it is inconsequential to the [ALJ's] ultimate nondisability

20 determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing

the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP SEQUENTIONAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. *Id*. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. *Id*. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the

claimant's impairment. *Id.* § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. *Id.* § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. *Id.* § 416.920(a)(4)(iii). If the impairment is as severe as, or more severe than, one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. *Id.* § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, *id.* § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the

ORDER ~ 4

past ("past relevant work").  *Id*. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  *Id*. §  416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  *Id*. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  *Id*. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above. *Lockwood v. Comm'r of Soc. Sec. Admin*., 616 F.3d 1068, 1071 (9th Cir. 2010).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

"A finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Parra v. Astrue*, 481 F. 3d 742, 746 (9th Cir. 2007) (citing *Bustamante v. Massanari*, 262 F. 3d 949, 954 (9th Cir. 2001)). When there is medical evidence of drug or alcohol addiction, the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). In order to determine whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. *Id*. §§ 404.1535(b)(2), 416.935(b)(2). If the remaining limitations would not be disabling, drug or alcohol addiction is a contributing factor material to the determination of disability. *Id*. If the remaining limitations would be disabling, the claimant is disabled independent of the drug or alcohol addiction and the addiction is not a contributing factor material to the disability determination. *Id*. Plaintiff has the burden of showing that drug and alcohol addiction (DAA) is not a contributing factor material to disability. *Parra,* 481 F.3d at 748.

## ALJ'S FINDINGS

Plaintiff applied for disability insurance benefits (DIB) and supplemental security income disability benefits (SSI) on July 27, 2011, alleging onset beginning

June 30, 2008.  Tr. 160-71.  The claims were denied initially and on reconsideration.

Tr. 112-15, 118-22.  Plaintiff appeared for a hearing before an administrative law

judge (ALJ) on June 4, 2013.  Tr. 42-67.  On July 19, 2013, the ALJ rendered a

decision denying Plaintiff's claim.  Tr. 20-35.

      At the outset, the ALJ found that Plaintiff met the insured status requirements

of the Act with respect to his DIB claim through December 31, 2013.  Tr. 22.  At

step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since June 30, 2008, the alleged onset date.  Tr. 23.  At step two, the ALJ found that

Plaintiff suffers from the following severe impairments: schizoaffective disorder;

anxiety disorder, not otherwise specified; polysubstance abuse in reported remission

since 2010; and asthma.  Tr. 23.  At step three, the ALJ found three of the conditions

medically meet three listed impairments: 12.04 (schizoaffective disorder)[1], 12.06

---

[1] The ALJ found the "paragraph A" criteria under Listing 12.04 are satisfied because
the claimant's schizoaffective disorder is characterized by at least four of the criteria
set forth by the listing, including appetite disturbance with change in weight,
psychomotor agitation, decreased energy, difficulty concentrating or thinking, and
hallucinations.  Tr. 23 (citing Tr. 271 (diagnosed with schizophrenia, hears voices,
difficulty concentrating, May 2008); Tr. 277 (diagnosed with schizophrenia, NOS,
chronic, needs medication refill, reports does well on medication, September 2008);
Tr. 282 (history of depression and schizophrenia, medication makes tired and has
gained weight, September 2009) and Tr. 315 (diagnosed with undifferentiated
schizophrenia and amphetamine and cannabis dependence, January 2010)).

(anxiety disorder)[2] and 12.09 (substance abuse disorder).[3]  Tr. 23 (citing 20 C.F.R.

Part 404, Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(d) and 416.920(d)).  The ALJ

found that if Plaintiff stopped substance use, he would still suffer severe

impairments but they would not meet the criteria of any listed impairment.  Tr. 25.

[2] The ALJ found the "paragraph A" criteria under listing 12.06 are satisfied because
the claimant's anxiety disorder is associated with medically documented findings of
generalized persistent anxiety, accompanied by three out of four of the listed signs or
symptoms, including motor tension, autonomic hyperactivity, and apprehensive
expectation.  Tr. 23 (citing Tr. 272 (anxious appearing, restlessness observed, speaks
of plots, poisoning or persecution by supernatural forces, May 2008); Tr. 282
(feeling anxious often, nervous about getting and keeping a job, diagnosis includes
anxiety state, September 2009); Tr. 325 (past diagnosis of mood disorder, reports
panic attacks when leaves the house, worried what other people are thinking "all the
time," June 2009); and Tr. 331 (psychomotor agitation consistently displayed during
interview, appeared anxious, June 2009)).

[3] With respect to each of the Listings, the ALJ went on to find that the "paragraph B"
criteria are met because the impairments result in at least two marked restrictions of
daily living, that of social functioning and in concentration, persistence or pace.  Tr.
23-24.  As to social functioning, the ALJ cites Tr. 268: having thoughts that his
girlfriend is cheating on him, but he has no proof; feels like people are out to get
him; Tr. 325: problems leaving the house due to anxiety; symptoms of panic attacks
when does leave the house; voice tells him his wife was unfaithful and not
trustworthy.  As to concentration, persistence, or pace, the ALJ cites Tr. 325:
experiences lethargy and difficulty completing tasks; Tr. 322: depressive symptoms
cause difficulty concentrating; Tr. 282: experiences low energy and low motivation.
The ALJ also relied on the opinions of several professionals who opined Plaintiff
was unable to work at the level of substantial gainful activity due to a mental
disorder lasting more than twelve months.  Tr. 24-25 (citing in part Tr. 334
(assessing a GAF of 40, indicative of some impairment in reality testing or
communication or impairment in several areas); Tr. 317 (unable to engage in SGA
for over twelve months)).

Without substance abuse, the ALJ found that Plaintiff would be able to perform

work at all exertion levels, but with the following nonexertional limitations:

> [Plaintiff] would be able perform work that does not involve concentrated exposure of pulmonary irritants or the performance of more than lower semi-skilled tasks that do not involve more than brief superficial interaction with the general public and coworkers.

Tr. 27.

At step four, the ALJ found that, without substance abuse, Plaintiff would still

be unable to perform any past relevant work.  Tr. 33.  At step five, relying on a

vocational expert's testimony, the ALJ found that when substance abuse is excluded,

there are jobs that exist in significant numbers in the national economy that Plaintiff

can perform, including warehouse laborer, kitchen helper and hand packager.  Tr.

34.  The ALJ found substance use disorder is thus a contributing factor material to

the disability determination.  Tr. 34.  The ALJ found Plaintiff is not disabled as

defined by the Act because substance abuse renders him ineligible for benefits.  Tr.

35.

On November 24, 2014, the Appeals Council denied Plaintiff's request for

review, Tr. 1-5, making the ALJ's decision the Commissioner's final decision for

purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481,

422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

him disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act.  ECF No. 14.  Plaintiff raises the following two issues for this Court's review:

1.  Whether the ALJ properly discredited Plaintiff's symptom claims; and

2. Whether the ALJ properly weighed the medical opinion evidence.

**DISCUSSION**

**A.    Adverse Credibility Finding**

First, Plaintiff faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting his symptom claims.  ECF No. 14 at 11-17.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  "General findings are

insufficient; rather, the ALJ must identify what testimony is not credible and what

evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81

F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.

2002) ("[T]he ALJ must make a credibility determination with findings sufficiently

specific to permit the court to conclude that the ALJ did not arbitrarily discredit

claimant's testimony.").  "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920,

924 (9th Cir. 2002)).

　　　In making an adverse credibility determination, the ALJ may consider, *inter*

*alia*: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

claimant's testimony or between his testimony and his conduct; (3) the claimant's

daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the

claimant's condition.  *Thomas*, 278 F.3d at 958-59.

　　　This Court finds the ALJ provided several specific, clear, and convincing

reasons for finding Plaintiff's statements concerning the intensity, persistence, and

1    limiting effects of his symptoms "not credible to the extent they are inconsistent

2    with the [RFC] assessment."  Tr. 28.

3         First, the ALJ found that the objective medical evidence did not support

4    Plaintiff's claim of debilitating asthma to the extent it was inconsistent with the

5    RFC.  Tr. 28.  The ALJ set out the instances where Plaintiff was examined and the

6    record shows unremarkable respiratory functioning and instances where Plaintiff

7    failed to consistently report complaints of debilitating asthma.  Tr. 28.  For example,

8    the ALJ noted that in May 2008, one month prior to the alleged onset of disability,

9    Plaintiff had unremarkable respiratory functioning, and denied shortness of breath at

10   a medical check-up with a treatment provider.  Tr. 28 (citing Tr. 272 (Respiratory:

11   Lungs clear to auscultation.  Good air movement all fields.  No wheezes, crackles, or

12   rhonchi), Tr. 271 (denied shortness of breath)).[4]  Medical reports generated after the

13   date of onset of disability also show that Plaintiff denied shortness of breath.  *See,*

14   *e.g.*, Tr. 285 (Feb. 2010, denies shortness of breath); Tr. 286 (Feb. 2010, normal

15   respiratory pattern, lungs clear to auscultation); Tr. 518 (noting diagnosis of asthma,

16   but noting that he has not been using inhalers); *see also* Tr. 527 (no mention of

17   asthma in reporting of medical history).

---

18        [4] Plaintiff alleges the ALJ erred when she stated, "[c]ontrary to his hearing
     allegations, the claimant informed the clinician that he did not experience any
19   shortness of breath."  ECF No. 14 at 12-13 (citing Tr. 28, 271).  Plaintiff alleges the
     ALJ's reference to shortness of breath is not in the record cited by the ALJ.  Plaintiff
20   is mistaken.  In the record relied on by the ALJ, Art Flores, PAC, notes "Denies . . .
     SOB."  Tr. 271.  This is an acronym for shortness of breath.

ORDER ~ 12

1    Although a claimant's "testimony cannot be rejected on the sole ground that it

2    is not fully corroborated by objective medical evidence, the medical evidence is still

3    a relevant factor in determining the severity of the claimant's pain and disabling

4    effects." *Rollins v. Massanari*, 261 F.3d 853, 867 (9th Cir. 2001) (citing 20 C.F.R. §

5    404.1529(c)(2)).  Moreover, the failure to report symptoms to medical sources is a

6    permissible reason to discredit a claimant's complaints.  *Greger v. Barnhart*, 464

7    F.3d 968, 972 (9th Cir. 2006).

8    Plaintiff alternatively contends that he "does not challenge the asthma (RFC)

9    determination, so it is irrelevant."  ECF No. 14 at 13.  The authority cited by

10   Plaintiff, *Ghanim*, 763 F.3d at 1165, does not support his contention.  In *Ghanim*, the

11   Court rejected the ALJ's reliance on a clinical assessment of narcissistic traits and

12   his pursuit of an unrelated discrimination suit as a basis for an adverse credibility

13   finding.  763 F.3d at 1165.  Here, the ALJ relied on the lack of objective evidence

14   supporting Plaintiff's symptom claims, a valid reason to diminish credibility, as long

15   as it is not the sole reason.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

16   Moreover, the Court rejects Plaintiff's contention that he can undermine an ALJ's

17   credibility determination by waiving an argument on appeal.  Here, the ALJ made a

18   credibility finding based on the Plaintiff's symptom claim that he was unable to

19   work due to asthma and respiratory limitations, by contrasting that claim with the

20

medical record.  This reason constitutes a permissible basis for discrediting

Plaintiff's testimony.

Second, the ALJ found that without substance use, Plaintiff would have less severe symptoms than alleged.  Tr. 28.  The ALJ also found that Plaintiff improved with conservative treatment.  Tr. 28.  While it may be error "to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment," an ALJ may rely on examples of "broader development" of improvement when finding a claimant's testimony not credible.  *Garrison*, 759 F.3d at 1017-18.  Moreover, the effectiveness of medication and treatment is a relevant factor in determining the severity of a claimant's symptoms.  20 C.F.R. § 404.1529(c)(3), 416.929(c)(3);  *see Warre v. Commissioner of Social Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006) (Conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits).  The ALJ identified Plaintiff's statements in the record where Plaintiff admitted that his mental health problems were substantially exacerbated by substance abuse.  Tr. 28 (citing Tr. 325).  For example, Plaintiff was diagnosed in 2007 with, in part, methamphetamine-induced psychosis.  Plaintiff told a treatment provider he had been diagnosed with drug-induced schizophrenia.  *See, e.g*., Tr. 26, 29, 254, 325, 339, 387.

The ALJ then detailed the substantial citations in the record to (1) Plaintiff's statements during examinations, and (2) medical providers' observations, showing

1    that Plaintiff's condition improved after his substance abuse ceased and when he was

2    taking medications and seeking treatment.  Tr. 28-30.  Contrary to Plaintiff's claim

3    that the ALJ "cherry pick[ed]" snippets where Plaintiff was having a good day, ECF

4    No. 14 at 13, the ALJ cited dozens of instances where the record shows improved

5    functioning when Plaintiff ceased substance abuse.  As an example, on April 3,

6    2013, it was reported that Plaintiff "is without symptoms, he is able to take college

7    course, develop a business plan.  He has been off medications for 8-9 months

8    without any symptoms, [he] is cognitively intact, and he writes papers for school--he

9    is able to retain complex information."  Tr. 554.

10            Significantly, the ALJ found Plaintiff disabled at step three of the analysis

11    when drug and alcohol analysis (DAA) is included.  Tr. 23.  This is not a case where

12    the ALJ "cherry picked" evidence, such as symptom-free periods, to find Plaintiff

13    less than credible.  Instead, the ALJ's citations to the record show comparisons of

14    Plaintiff's functioning when DAA is included, compared with periods when Plaintiff

15    was clean and sober, as is required to determine whether a claimant would still be

16    disabled if he stopped abusing substances.  *Bustamante,* 262 F.3d at 956 ("Only if

17    the ALJ determines that Bustamante is disabled under the five-step inquiry, should

18    the ALJ consider whether 'alcoholism is a contributing factor material to' that

19    determination, pursuant to 20 C.F.R. §§ 404.1535 and 416.935").

20

ORDER ~ 15

Fourth, the ALJ found Plaintiff's reported activities demonstrated that he is capable of performing a full array of activities and his activities were inconsistent with his allegations of debilitating symptoms.  Tr. 30.  Plaintiff told an evaluating physician that he was responsible for the care of a small child, he visits with friends or relatives once a week, does the household chores of washing dishes, making beds, dusting, sweeping, washing clothes, and planting flowers and vegetables. Tr. 528. He detailed a very specific routine of his daily activities beginning at 7:00 a.m., concluding in the evening.  Tr. 528.  Plaintiff reported going out and dancing four to five days a week.  Tr. 360.  In May 2013 a clinician reports that Plaintiff is "without symptoms, he is able to take college course[s], [and] develop a business plan, . . . he is able to retain complex information."  Tr. 25, 30, 528, 554; *see also* Tr. 198-99 (in August 2011, plaintiff's girlfriend states he shops, plays cards and uses public transportation).

Daily activities can form the basis of an adverse credibility finding where the claimant's activities either contradict his other testimony or meet the threshold for transferable work skills.  *Orn v. Astrue*, 495 F. 3d 625, 639 (9th Cir. 2007).  A claimant need not be utterly incapacitated to receive disability benefits and sporadic completion of minimal activities is insufficient to support a negative credibility finding.  *Id.* (citing *Vertigan v. Halter*, 260 F. 3d 1044, 1050 (9th Cir. 2001)); *see also Reddick v. Chater*, 157 F. 3d 715, 722-23 (9th Cir. 1998) (requiring the

claimant's activity level is inconsistent with the claimed limitations in order to be relevant to the claimant's credibility).  The ability to care for a young child may be considered when assessing a claimant's credibility as to disabling symptoms.  *See Rollins,* 261 F.3d at 856-857.  Activities of dancing four to five times a week, socializing once a week, using public transportation, and taking college courses are inconsistent with Plaintiff's claims that he suffers severe mental health limitations, including disabling panic attacks and paranoia when in public.

It may be true that Plaintiff's testimony was somewhat equivocal about how regularly he was able to keep up with the activities and the ALJ's interpretation of his testimony may not be the only reasonable one.  But it is a reasonable interpretation and is supported by substantial evidence, thus, it is not this Court's role to second-guess it.  *See Rollins*, 261 F.3d at 857

In sum, the ALJ provided several specific, clear, and convincing reasons for rejecting Plaintiff's testimony.

**B. Medical Opinion Evidence**

Next, Plaintiff faults the ALJ for discounting the opinions of Dr. Smith and Dr. Pollack.  ECF No. 14 at 17-20.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who

review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

### 1. Lisa Marie Smith, M.D.

Plaintiff contends that the ALJ failed to properly credit Dr. Smith's September 2011 opinion that Plaintiff needed "increased support, with repetitive directions and

ORDER ~ 18

clear expectations" and "increased support around interactions with coworkers" (Tr. 287).  *See* ECF No. 14 at 18-19.

This Court finds the ALJ properly rejected the opinion of Dr. Smith.  Since her limitations were contradicted by the opinions of both Dr. Kester and Dr. Robinson who found that Plaintiff needed no increased support (Tr. 75-76, 96-98), the ALJ need only have provided "specific and legitimate" reasoning for rejecting Dr. Smith's opinion regarding these limitations.

Dr. Smith conducted an evaluation in September 2011, where Dr. Smith opined that (1) Plaintiff has difficulty following instructions and with concentration, and would need increased support with repetitive directions and (2) Plaintiff would need increased support around his interactions with coworkers due to a tendency to become paranoid.  Tr. 30, 487.  The ALJ gave the opinion limited weight because these restrictions were "more limited than the objective medical evidence supports." Tr. 30.  As evidence, the ALJ cited to objective testing and observations that did not support the assessed difficulties following instructions and concentrating.  *See* Tr. 505 (on examination, Plaintiff is alert, oriented; short and long term memory intact); *see, e.g.*, Tr. 269, 276, 278, 285 (concentration normal); Tr. 493, 496 (concentration good, short and long term memory intact); Tr. 514 (concentration pretty good); Tr. 516 (concentration ok).  The consistency of a medical opinion with the record as a

1    whole is a relevant factor in evaluating a medical opinion.  *Lingenfelter,* 504 F.3d at

2    1042; *Orn*, 495 F.3d at 631; 20 C.F.R. §§404.1527(c)(4), 416.927(c)(4).

3        Plaintiff contends the ALJ erred when the ALJ relied on the May 26, 2011,

4    assessment of Dr. Tran[5] in rejecting Dr. Smith's proposed limitation because, in

5    addition to finding that Plaintiff was alert, oriented, and had intact long and short

6    term memory, Dr. Tran also "gave a GAF of 45, during this period, indicating

7    serious symptoms or impairment."  ECF No. 14 at 18 (citing Tr. 30, 505).  However,

8    clinicians use a Global Assessment Functioning (GAF) to rate the psychological,

9    social, and occupational functioning of a patient.  The scale does not evaluate

10   impairments caused by psychological or environmental factors.  *Morgan v. Comm'r*

11   *of Soc. Sec. Admin.,* 169 F.3d 595, 598 (9th Cir. 1999).  The Commissioner has

12   explicitly disavowed use of GAF scores as indicators of disability.  "The GAF scale .

13   . . does not have a direct correlation to the severity requirements in our mental

14   disorder listing."  65 Fed. Reg. 50746-01, 50765 (Aug. 21, 2000).  Moreover, the

15   GAF scale is no longer included in the DSM–V.  *See Diagnostic and Statistical*

16   *Manual of Mental Disorders*, 16 (5th ed. 2013)  ("It was recommended that the GAF

17   be dropped from the DSM-5 for several reasons, including its conceptual lack of

18   clarity (i.e., including symptoms, suicide risk and disabilities in its descriptors) and

19

20   [5] It appears Dr. Smith and Dr. Tran supervised Plaintiff after he was enrolled in a clinical trial of a long-acting injectable medication for schizophrenic/schizoaffective disorder.  Tr. 488.

ORDER  ~ 20

1    questionable psychometrics in routine practice.")).  As a result, the ALJ's failure to

2    address the GAF score does not undermine her rejection of Dr. Smith's opinion.

3         Plaintiff further contends that the ALJ should have given greater weight to Dr.

4    Smith's assessed limitations because "Dr. Smith specifically addressed [Plaintiff's]

5    symptoms in a work environment rather than merely from a mini mental status exam

6    point of view."  ECF No. 14 at 18.  Here, the ALJ relied on more than one mini-

7    mental status exam when she rejected (to the extent she rejected) Dr. Smith's more

8    extreme limitations.  The ALJ relied on Dr. Tran's opinions (both before and after

9    Dr. Smith's opinion), that Plaintiff's long and short term memory were intact.  Tr.

10   30, 493, 505.  This was within the ALJ's province to assess the conflicting evidence.

11        With respect to Dr. Smith's opinion as it relates to symptoms of paranoia, the

12   ALJ rejected Dr. Smith's opinion that Plaintiff has a tendency to become paranoid

13   because her own reports show that the claimant exhibited "great mood, normal

14   affect, and showed no evidence of hallucinations."  Tr. 31 (citing Tr. 514, 516).

15   Plaintiff faults the ALJ for referencing these observations since they were not made

16   on the date of the evaluation at issue, which was September 19, 2011, and were in

17   fact made on December 20, 2011 (Tr. 514) and February 15, 2012 (Tr. 516).  As

18   discussed previously, the consistency of a medical opinion with the record as a

19   whole is a relevant factor in evaluating a medical opinion.  *Lingenfelter*, 504 F.3d at

20   1042; *Orn*, 495 F.3d at 631; 20 C.F.R. §§404.1527(c)(4), 416.927(c)(4).

Plaintiff further alleges that continued references to paranoia undermine the ALJ's rejection of Dr. Smith's assessed limitations; however, Plaintiff acknowledges "*mild paranoia*" is referenced.  Mild limitations do not, by definition, significantly affect the ability to perform work-related activities.  More significantly, the "tendency to become paranoid" appears based on Plaintiff's unreliable self-report.  A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan*, 169 F.3d at 602; *Fair v. Bowen,* 885 F.2d 597, 604 (9th Cir. 1989).  As noted, Plaintiff has stated he socializes, goes dancing four to five times a week, shops, and uses public transportation, all indicating an ability to socialize normally that is inconsistent with limitations resulting from paranoia.  Tr. 219, 360.  Activities have also included playing cards and video games, child care, and later, taking college courses and developing a business plan, all of which require concentration.  Tr. 218-19.

With respect to Dr. Smith's assessed need for increased support as to interactions around co-workers, the ALJ's assessed RFC limits Plaintiff to brief superficial interaction with co-workers. Thus, the ALJ appears to have incorporated this limitation.  Plaintiff cites no additional limitations the ALJ should have included to address Plaintiff's limitations with respect to co-workers.

To the extent the ALJ rejected these assessed limitations, she properly did so because they are contradicted by other evidence in the record, including Plaintiff's functioning, and they appear to be based, at least in part, on Plaintiff's unreliable self-reporting.  A contradicted medical opinion may properly be rejected if it is brief, conclusory and inadequately supported by clinical findings.  *Bayliss*, 427 F.3d at 1216.  An opinion premised on unreliable self-reporting may properly be discounted. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

2.  *Dennis Pollack, Ph.D.*

Next, Plaintiff alleges the ALJ failed to properly credit the opinion of examining psychologist Dennis Pollack, Ph.D.  ECF No. 14 at 19-20.

The ALJ rejected Dr. Pollack's opinion that Plaintiff is markedly limited in the ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and complete a normal workday and work week without interruptions from psychologically based symptoms, Tr. 533, because it is inconsistent with Plaintiff's daily activities.  Tr. 32.  Dr. Pollack notes that Plaintiff reported he gets his child ready for school, takes the child to and from school, puts the child down for a nap, cleans the house, waters the garden, makes dinner, bathes the child, and then puts the child to bed at 8:30, all on a precise daily schedule.  Tr. 528.  The ALJ is correct that this is entirely inconsistent with Dr. Pollack's assessed *marked* limitation in the ability to perform within a schedule.

1    Plaintiff alleges the record shows that he has had difficulty with children and

2    is unable to consistently care for them. ECF No. 14 at 19-20. The ALJ relied on the

3    inconsistency between what Plaintiff told Dr. Pollack and Dr. Pollack's assessment.

4    The internal inconsistency is a specific, legitimate reason.  Essentially, Plaintiff asks

5    the Court to reweight the evidence, a task the Court is not permitted to do.

6    The ALJ's reasons for failing credit Dr. Pollack's somewhat extreme assessed

7    limitations are specific, legitimate and supported by substantial evidence.  An ALJ

8    may properly reject any opinion that is brief, conclusory and inadequately supported

9    by clinical findings.  *Bayliss*, 427 F.3d at 1211.  An opinion may also be rejected to

10   the extent it is inconsistent with daily activities.  *Morgan,* 169 F.3d at 601-02.

11   Plaintiff alleges that the ALJ should have weighed the evidence differently,

12   but the ALJ is responsible for reviewing the evidence and resolving conflicts or

13   ambiguities in testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

14   It is the role of the trier of fact, not this court, to resolve conflicts in evidence.

15   *Richardson v. Perales*, 402 U.S. 389, 400 (1971).  If evidence supports more than

16   one rational interpretation, the Court may not substitute its judgment for that of the

17   Commissioner.  *Tackett v. Apfel,* 180 F.3d 1094, 1097 (9th Cir. 1999);  *Allen v.*

18   *Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  If there is substantial evidence to

19   support the administrative findings, or if there is conflicting evidence that will

20   support a finding of either disability or nondisability, the finding of the

Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## CONCLUSION

After review the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment, ECF No. 14, is **DENIED**.

2. Defendant's motion for summary judgment, ECF No. 16, is **GRANTED.**

The District Court Executive is directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** the file.

DATED this 30th day of March, 2016.

<u>*S/ Mary K. Dimke*</u>

MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER ~ 25